Moncure, P.,
delivered the opinion of the court.
This is a writ of error to a judgment of the circuit court of Essex county, rendered on the 11th day of May, 1872, in an action of debt then pending in said court in *135 the name of the plaintiffs in error, Fanny Slaughter and Matilda Slaughter, against the defendant in error, Ellen D. Farland, executrix of the last will and testament Zebulon S., alias Z. S. Farland, deceased, who is his lifetime was sued with George T., alias Ceorge T. Wright, and Robert S., alias R. S. Hipkins.
The original action was brought in the said court on the 19th day of August, 1868; the writ was returnable to September rules next thereafter, and was returned duly executed on all the defendants. At the same rules a declaration was filed in the case, which is in the due form of a declaration in an action of debt on a protested negotiable note, payable at the Bank of Commerce, Fredericksburg, against the maker and endorsers thereof. At the same rules a common order was entered against all three of the defendants, the maker and the two endorsers of the note. At the next rules, to-wit: on the 5th day of October, 1868, the common order or conditional judgment entered against two of the defendants, to-wit: the maker, Wright, and first endorser, Hipkins, at the last rules was confirmed, and it was suggested that the other defendant, Zebulon S., alias Z. S. Farland, was dead. At the next succeeding term of the said court, to-wit: on the 18th day of November, 1868, being the last day of the said term, an order was made in the case stating that the plaintiffs on that day came by their attorneys, and the said defendants, Wright and Hipkins, being again solemnly called and failing to appear, and the judgment obtained against them at rules not having been set aside, and the plaintiffs being then entitled to a final judgment, it was therefore considered by the court that the plaintiffs recover against the said defendants the sum of $687.54, with interest thereon at six per centum per annum from the 1st day of April, 1862, till paid, and also $2.85 cents, the charges of protest of the said note', and also the plaintiffs’ costs of suit, $7.32 cents.
*136 On the 15th day of September, 1869, the plaintiffs suec^ out °f c^ert’s office of said court a scire facias revive the said action aghinst Ellen D. Earland, executrix of the last will and testament of the said Zebulon S., alias Z. S.. Earland, deceased.
Afterwards, to-wdt: at rules held at the clerk’s office of said court on the 4th day of October, 1869, the scire facias aforesaid having been returned executed, it was ordered that the cause stand and be revived against the said Ellen D. Earland as executrix aforesaid, and be in all things in the same plight and condition it was in at the time of the death of said Zebulon S., alias Z. S. Ear-land, deceased; and on the motion of the plaintiffs it was further ordered that the conditional judgment against the said defendant, Zebulon S:, alias Z. S. Farland, be confirmed.
And at a circuit court continued and held for said county, on the 17th day of November, 1869, came the said parties to the said revived action by their attorneys, and on- the motion of the defendant the judgment obtained against her in the clerk’s office in the cause was set aside, and the said defendant plead “ nil debit ” and “ offsets,” to which said pleas the plaintiffs replied generally, and issues were thereupon joined by the parties, and leave wTas given to the defendant to file special pleas in writing wuthin ninety days, and the cause was continued till the next term.
At the next term, to-wit: on the 28th day of April, 1870, on the motion of the defendant it was ordered that the cause be continued for her and at her costs for that term.
At the next term, to-wdt: on the 15th day of November, 1870, on the motion of the defendant she w’as permitted to file the special pleas in writing which leave wTas given her fo file at November term, 1869, and the plaintiffs filed a general demurrer to said special pleas, in *137 which demurrer the defendant joined, and which, upon being argued, the court sustained. Whereupon the issues joined in the cause were tried by a jury, which found a verdict for the plaintiffs for the sum of $491.10. On the motion of the plaintiff's the verdict was set aside and a new trial was granted them, and thereupon the cause was •continued till the next term.
At the next term, to-wit: on the 13th day of May, 1871, the case was tried by a jury upon the issues joined thereon, hut the jury being unable to agree was discharged, and the cause was continued till the next term for a new trial to be had therein.
At the next term, to-wit: on the 14th day of November, 1871, on the motion of the defendant it was ordered that the cause be continued for her and at her costs at that term.
At the next term, to-wit: on the 13th day of May, 1872, came the parties aforesaid by their attorneys, and neither party, plaintiff's nor defendant, demanding a jury, the whole matter of law and fact was submitted to the court. Whereupon it was considered by the court that the plaintiffs take nothing by their bill, but for their false clamor be in mercy, &c., and that the defendant recover against the plaintiffs her costs by her about her defence in that behalf expended, and that the defendant go thereof without day.
The plaintiffs excepted to the said judgment of the court, and tendered their bill of exceptions, which was made a part of the record, and is in the words and figures following, to-wit:
“ Be it remembered that on the calling of this cause the parties, by their attorneys, announced themselves as ready for the trial of the cause, and none of the parties demanding that the cause be tried by a jury, the whole matter of law and fact was heard by the court. The *138 plaintiffs, to prove and maintain the issue on their part, showed as evidence to the court the note in writing on this suit was instituted, with all the endorsements thereon, in the words and figures following, to-wit:
• “Tappahannock, 29th November, 1861.
« Four months after date I promise to pay to the order of Bobert S. Hipkins six hundred and eighty-seven dollars and fifty-four cents, value received, payable at Bank of Commerce, Fredericksburg.
687.54; 4,270. Geo. T. Wrigiit.
687.54 due Hoy. 29th. Geo. T. Wrigiit.
R. S. Hipkins.
Z. S. Farlanu.”
And also the protest in writing of the said note in the words and figures following, to-wit:
Then follows a copy of the note, after which is the notarial certificate, in these words :•

State of Virginia, District of Fredericksburg, to-wit:

Be it known, that on the first day of April, in the year of our Lord one thousand eight hundred and sixty-two, at the request of the cashier of the Bank of Commerce, at Fredericksburg, I, Samuel S. Howison, notary public for the district aforesaid, by lawful authority, duly commissioned and qualified, presented at the .Bank of Commerce, where the same was made payable, the original note (whereof the above is a true copy), and demanded payment of the same, which was refused; therefore the said notary have protested, and do by these presents solemnly protest against the drawer or drawers of the said noté) and all others to whom it doth or may concern, to avail for the principal sum, together with all interest, exchange, costs and damages suffered and to be suffered for nonpayment thereof. Whereupon I gave notice of the said *139 protest to the parties concerned as follows, viz: notice for drawer and two first endorsers at Tappahannock, Virginia, and to last endorsers in pérson at burg, informing them respectively that they were liable ter the payment of said note. In testimony whereof I have hereunto set my hand' and affixed the seal of my office on the 1st day of April, 1862.
S. 8. IIowison, Notary Public.

Fredericksburg, Virginia—Notary Public, D. S. TJ.

Tax on seal, - - - - $1 50
Cost of protest, - - - 1 00
Extra notices, - 20
Paid postage, - 15
Protest book AA., 44. §2 85
And the plaintiffs, further to prove and maintain the issue on their part, showed in evidence to the jury, by one witness, R. A. Cauthorn, that he was postmaster at the town of Tappahannock, in the state of Virginia, from sometime early in the year 1861, to sometime in the month of May, 1862 ; that on the 31st day of March, 1862, he mailed a letter at the postoffice in Tappahannock to Fredericksburg, in said state, and sent it by the Fredericksburg mail; that shortly thereafter (the precise day not recollected), he received a letter from Fredericksburg, dated 5th April, 1862, in reply to his letter; that he does not know whether the reply letter came by the direct mail from Fredericksburg to Tappahannock, or ría Richmond city; that he knows of no irregularity or obstruction of mail communication about the 1st of April, 1862, between Fredericksburg and Tappahannock; that his practice about that time was to send the mail for Fredericksburg via Richmond city;" that during the entire month of April, 1862, Tappahannock was 'the postoffice of *140 the defendant, Z. S.'Farland, and that for the same time anc^ UP the summer of that year, there was regular communication between Tappahannock and Rich-mond, and that mail matter frequently came from Fredericksburg to Tappahannock via Richmond. And the defendants, to prove and maintain the said issue on-their part, showed in evidence to the- court, by one witness, James H. Muse, that he, the said Muse, -was commissary for the Fifty-fifth Virginia regiment; that the mail carrier from Fredericksburg to Tappahannock boarded with him; that he did not come to Tappahannock from the 1st -to the 3d of April, 1862, when the witness left with the regiment, and that if the mail had been brought from Fredericksburg to Tappahannock between the 3d and the 6th, over the regular route, he should have known it; that the said regiment was ordered to Fredericksburg, and on the 3d of April, 1862, left Tappahannock and went so far as Lloyd’s, in Essex county ; on the next day to Loretto, in said county; on the next day (the 5th) to Port Royal, and on the next day (the 6th) to Massaponax swamp, near Fredericksburg; that he accompanied the regiment, and during this time, from the 3d to the 6th of April, 1862, inclusive, he was satisfied that no mail conveyance passed on the direct route (over which the regiment travelled) between Fredericksburg and Tappahannock; that for several days the regiment was detained at the said swamp, which was so much swollen that it was impossible to cross it; that said Z. S.Far-land on the 3d day of April, 1862, went out in the country to place his family with P. A. Sandy, and said Farland went with the said regiment and remained for some time; that at and about this time the cars were running between Fredericksburg and Richmond. And the defendants, further to prove and maintain the issue on their part, showed in evidence to the jury, by one witness, John T. Eorghar, that the aforesaid regiment left Tap *141 pahannock for Fredericksburg on the 5th day of April, 1862, and on reaching Port Royal remained there two days and nights, because of high Avater at the nax swamp, and then proceeded to Fredericksburg.
And the defendants, further to prove and maintain the issue on their part, showed in evidence to the jury the deposition of one witness, S. S. Ilowison, in. the words and figures :
“ The deponent being first duly sworn, deposeth and saith:
“First question by defendant’s counsel: Were you a notary public of the corporation or district of Fredericksburg, state of Virginia, in the year 1862, and if yea, Avhen and by whom were you appointed ?
“ Answer : I Avas commissioned a notary public by Governor John Letcher, in the early part of 1861, as far as my memory serves me; I cannot state positively the date of my commission; under the same commission I protested the note above-mentioned; I never gave any notice to any of the parties of the removal of any of the effects of the Rank of Commerce, nor do I know that any formal ’notice Avas given by any of its officers. The specie of the • bank was removed,' according to my recollection, in April, 1862; the books and all its papers were stowed aAvay in a vault under a store in Fredericksburg for some months. I do not believe the bank did any regular business after 1862; it was engaged simply in closing up the specie of the bank. I think it was moved on the 3d of April; the event being precipitated by the presence of General Augur’s United States army brigade on the Stafford side of the Rappahannock fiver, opposite the town of Fredericksburg. The books and papers of the bank were moved from the banking rooms and stOAved away in the vault under the store in Fredericksburg, as before stated, about the’sanie date, viz: on *142 the night of the 3d of April, or the morning of the 4th of April.
<• And further this deponent saith not.
S. S. Howison.”
“ And this being all the evidence offered in the said cause, the court having considered the same and the arguments of counsel, adjudged that the plaintiffs take nothing by their bill, but for their false clamor be in mercy, &c.,and that the defendants recover against the plaintiffs their costs by them about their defence in this behalf expended. To which said judgment of the court the plaintiffs by their counsel except, and tender this their bill of exceptions, and pray that the same may be signed, sealed and enrolled and made a part of the record in the said cause, which is accordingly done.
J. M. Jeffries, [Seal].”
To the said judgment of the circuit court the plaintiff's applied to a judge of this court for a writ of error ; which was accordingly awarded.
There are but two questions arising in this ease : one of form, and the other of substance. First, whether the proceeding by scire facias against the personal representative of one of the joint defendants, who died pending the action, was valid and legal; and, second, whether due notice of the dishonor of the note on which the action was brought was given to the endorsers, so as to make them liable.
The former question was not raised by any of the parties, either in the court below or in this couiff. And if it might have been successfully raised by any party in the court below, it was waived by the acts and proceedings of the parties in the case in that court, and they are con-eluded from now making it in this court. The action was brought, as we have seen from the preceding state *143 ment of the case, by the holders against the. maker and •two endorsers of a protested negotiable note payable at a bank. Though the contract of the maker and was, in its nature, the several contract of the parties, yet the statute authorized a joint action to be brought by the holders against the maker and the endorsers, thus treating it as a joint contract of the parties. The holders had a right of election to bring a joint action against the maker and endorsers or a several action against each. But by bringing a joint action against all, the contract must be considered as a joint one quo ad the action, •which is subject to the same rules which govern any other action against several upon a joint contract.
The last endorser in this case, Z. S. Farland, died pending the action, after the common order had been entered against all the defendants at rules, but before it liad been confirmed against any of them at the succeeding rules. At the latter rules the death of the said Z. S. Farland was suggested, and the common order was confirmed against the other defendants. At the next succeeding term of the circuit court, no defence having been made by the said other°defendants, the office judgment against them became a judgment of the last day of that term. Eo notice was then taken of the other defendant, Z. S. Farland, nor was any abatement or discontinuance of the case ever entered as to him, nor was any further notice taken of him after the suggestion of his death, on the 5th day of October, 1868, until the 15th day of September, 1869, when a scire facias was sued out by the plaintiff to revive the action against Ellen I). Farland, executrix of the last will and testament of the said Z. S. Farland. The said scire facias was returned duly executed on her, and she did not move to quash it nor demur to it upon the ground that there could be.no proceeding against her except by a new action, nor upon any other ground. What would have been the effect of *144 such an objection to the scire facias is a question which nee<^ no* 110W decided. It is enough to say, that what-right she may have had, if any, to make such an objection was waived by not making it, and by her own subsequent conduct in the case. On the 17th day of November, 1869, on the motion of the said defendant, she plead “ nil debit ” and “ offsets,” on which issues, were joined between the parties. She obtained leave to-file special pleas in wilting within ninety days, and the cause was continued until the next term. The cause was twice afterwards continued on her motion and at her costs. And there were various other proceedings in the case, which are fully set out in the statement of the case, and need not be here repeated, but which are conclusive against any right on her part, at this time, if any such, right ever existed, to object to the proceeding against her by scire facias.
We, therefore, now proceed to consider the only remaining question in the case, and the only question raised and relied on in it by the defendant, Ellen E. Earland, executrix of Z. S. Earland, deceased'; that is, whether it appears from the evidence in the record that due notice of the dishonor of the note was given to. the said endorser, Z. S. Earland.
.The note was payable at the “Bank of Commerce, Eredericksburg,” and was due and payable on the 1st day of April, 1862. The evidence of its presentation! for payment, its dishonor, the protest for non-payment, and the notices which were given to the maker and endorsers of such dishonor, and that they were looked to for payment, is contained in the notarial certificate-which is made a part of the record, and is certified, with the other evidence, in the bill of exceptions taken to the-judgment of the court in the case. That the note was. duly presented for payment at the Bank of Commerce, Eredericksburg, on the day on which it was payable, and *145 payment’ was then and there duly demanded, but was not made, .and that-the note was then and there duly protested for non-payment, are facts which are set out the notarial-certificate of protest, and are not and cannot suceessfully be denied. Was due notice given to the endorsers to bind them?
What is said in the said certificate on this subject ?
The statute declares what contracts shall be deemed negotiable, and may, upon being dishonored for nonacceptance or non-payment, be protested; and that the protest in such cases “shall be prima facie evidence of what is stated therein, or at the foot or on the back thereof, in relation to presentment, dishonor, and notice thereof.” Code, p. 987, ch. 141, §§ 7 and 8.
How, “ what is stated therein, or at the foot thereof, or on the back thereof, in relation to presentment, dishonor, and notice,” as aforesaid ? As to presentment and dishonor, there can be no difficulty nor any question. But as to notice ?
It is stated on the certificate of protest aforesaid, as to notice, as follows: “Whereupon”—that is, upon the protest of the note for non-payment—“I gave notice of the said protest to the parties concerned as follows, viz: Hotiee for drawers and two first endorsers atTappahannocfe, Va., and to last endorsers in person at Fredericksburg, informing them, respectively, that they were liable for the payment of said note.” And at the foot of the protest is a statement of the items of the costs of protest, amounting together to $2.85, one of which items is this: “Paid postage, 15 ” (cents). And this seems, by a memorandum at the foot of said statement, to have been entered in “Protest book AA, page 44.”
It thus appears from the said certificate, and what is stated thereon and at the foot of it, that after the said protest was made, and on the same day, notice of *146 the said protest was given to the two first endorsers (one 0^' whom, the second, was the said Z. S. Farland) them, respectively, that they were liable for the payment of said note. Flow, here is positive evideuce of the fact of notice of the protest, and given by the notary to the endorser Farland on the day of the protest. Such notice might legally have been given to said Farland either in person or by letter sent through the post-office. It appears that such notice was in fact given in the latter way. Tappahannock is about sixty miles from Fredericksburg, and notice could not well have been given by the notary to the endorsers residing there in person without employing, at heavy expense, a special agent for that purpose, and no charge was made by the notary for any such expense. It is stated in the certificate that notice was given to the “ last endersors in person at Fredericksburg,” no doubt because they resided there, where the notary resided and the protest was made; which implies that the notice stated in the certificate to have been given to the “ drawer and two first endorsers at Tappahannock, Va.,” was not given to them in person, but otherwise; that is, through the mail. And in confirmation of this is the charge for postage as aforesaid. "What postage could that be but for notices sent by mail to the said parties at Tappahannock ?
That Tappahannock was at that time the post-office of the said Z. S. Farland, who then resided there, is . certified as a fact proved in the cause; and also that .there was, at that time, regular mail communication between Fredericksburg and Tappahannock. Such communication may have been via Richmond. But .that fact, if it was a fact, can make no difference. Letters going by mail between the two places no doubt went as expeditiously, or nearly so, via Rich *147 mond as by the direct route, though the distance was somewhat increased by the former -mode. Probably communication by letter between the two places might be more frequent via Richmond than directly, even •supposing that there was no obstruction of the direct route. Rut if the direct route was temporarily obstructed, as it may have been by troubles arising out of the war, then the regular mail route during the period of such obstruction was via Richmond; and notice of protest sent in' a letter by’ that route was reasonable and sufficient.
The authorities cited by the learned counsel for the plaintiffs in error clearly show that the notice proved to have been given to the said Z. S. Farland as aforesaid was sufficient. All or most of the cases which have any material bearing upon the subject are referred to and their substance stated in 2 Robinson’s Pract., new edition, pp. 191-211; and 1 American Leading Cases, 249-259, The Bank of Columbia v. Lawrence, and the notes to that case. See also 26 Gratt. pp. 806 and 807.
The court is therefore of opinion that the judgment of the circuit court, against the plaintiffs in this case, is erroneous and ought to be reversed and annulled, with costs, and a judgment rendered against the defendant, to be levied de bonis testatoris for the amount of the said negotiable note, with legal interest from the day on which it became payable until payment, and costs of protest and costs of suit in the said circuit court.
The judgment was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the said judgment is erroneous. Therefore it is considered by the court *148 that the same be reversed and annulled, and that the plaintiff's recover against the defendant their costs -by expended in the prosecution of the writ of error aforesaid here, to be levied of the goods and chattels of the decedent in the hands of the defendant to be administered. And this court proceeding to render such judgment as the said circuit court ought to have rendered, it is further considered by this court that 'the plaintiff's recover against the defendant the sum of six hundred and eighty-seven dollars and fifty-four ' cents, the principal of the negotiable note upon which -this' action was instituted, and also two dollars' and eighty-five cents, the charges of protest of the said ■negotiable note, making together the sum of six hundred and ninety dollars and thirty-nine cents, with interest thereon at six per centum per annum 'from the l-st day of April, 1862, till paid, and also their costs 'by them- in this behalf in the said circuit court expended, to be levied of the goods and chattels of- the decedent in the hands of tlie defendant to be administered ; which is ordered to be certified to the said circuit court of Essex county.
•Judgment reversed.